Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
James A. Daire (SBN 239637)
Email: jdaire@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA  94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Clear Channel
Outdoor, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MOZAFAR HENDESSI,<br><br>              Plaintiff,<br><br>v.<br><br>CLEAR CHANNEL OUTDOOR, INC.; and DOES 1 through 25, Inclusive,<br><br>              Defendants. | No: 17-cv-02175-JAM-DB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CLEAR CHANNEL OUTDOOR, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Fed.R.Civ.P. 12(c)**<br><br>**[Notice of Motion and Motion filed concurrently herewith]**<br><br>Date: February 27, 2018<br>Time: 1:30 p.m.<br>Place:  Courtroom 6<br><br>Honorable John A. Mendez |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case No. 17-cv-02175-JAM-DB

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................. 1

II.   ALLEGATIONS IN HENDESSI'S COMPLAINT ......................... 2

III.  THE CITY OF SACRAMENTO'S OFFSITE SIGN REGULATIONS ........... 4

IV.   LEGAL STANDARD ........................................................ 5

V.    ARGUMENT AND AUTHORITIES ....................................... 6

      A.    Hendessi's first claim for breach of contract fails
            because Clear Channel properly exercised its right to
            terminate the lease. ................................. 7

      B.    Hendessi's second claim for breach of an implied
            covenant fails because Clear Channel properly
            terminated the lease. ................................ 9

      C.    Clear Channel had the express right to remove its
            sign and improvements, which eliminates Hendessi's
            third claim of waste. ............................... 10

      D.    Hendessi's fourth claim for violation of Business &
            Professions Code § 17200 fails because Clear
            Channel's alleged acts are not unlawful, unfair or
            fraudulent. .......................................... 12

VI.   CONCLUSION .............................................................. 14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*2 Sprint Telephony PCS, L.P. v. County of San Diego*,
311 F.Supp.2d 898 (S.D. Cal. 2004)................................6

*Balistreri v. Pacifica Police Dep'
t*, 901 F.2d 696 (9th Cir. 1988)................................6

*Bomberger v. McKelvey*,
35 Cal. 2d 607 (1950)........................................11

*Brawley v. Crosby Research Found.*,
73 Cal. App. 2d 103 (1946)....................................9

*Carma Developers v. Marathon Development California*,
2 Cal.4th 342 (1992)......................................8, 10

*Cel-Tech Comm. Inc. v. Los Angeles Cellular Tel. Co.*,
20 Ca1.4th 163 (1999).......................................12

*Committee on Children's Television v. General Foods
Corp.*,
35 Cal.3d 197 (1983)........................................12

*Folberg v. Clara G. R. Kinney Co.*,
104 Cal. App. 3d 136 (1980)...................................9

*Gerdlund*,
190 Cal. App. 3d 263 at 277..................................10

*Graybiel v. Burke*,
124 Cal. App. 2d 255 (1954)..................................11

*Guz v. Bechtel National, Inc.*,
24 Cal. 4th 317 (2000)......................................10

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1990).................................6

*Hill v. Pinque*,
56 Cal. App. 245 (1922).....................................11

*HSBC Bank USA, Nat. Ass'n v. Dara Petroleum, Inc.*,
2010 WL 2197525 (E.D. Cal. May 28, 2010)......................6

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Kurihara v. City Market of Los Angeles*,
   90 Cal.App. 374 (1928).........................................7

*Maas v. Standard Oil Co. of California*
   220 Cal.App.2d 913 (1963).....................................7

*Monaco v. Bear Stearns Residential Mortgage Corp.*,
   554 F.Supp.2d 1034 (C.D. Cal. 2008)...........................6

*Old Republic Ins. Co. v. Super. Ct.*,
   66 Cal.App. 4th 128 (1998)...................................11

*Shapiro v. Wells Fargo Realty Advisors*,
   152 Cal.App.3d 467 (1984)....................................10

*Swenson v. File*,
   3 Cal.3d 389 (1970)..........................................13

*In re Tobacco Cases*,
   46 Ca1.4th 298 (2009)........................................14

*Vandenberg v. Super. Ct.*,
   21 Cal. 4th 815 (1999).......................................11

**Rules**

Fed.R.Civ.P. 12(c) .............................................6

**Statutes**

Bus. & Prof. Code § 17203 .....................................14

Civ. Code, § 1638 .............................................8

**Other Authorities**

49 Cal, Forms of Pleading & Prac. (2013) Unfair
   Competition, § 565.31[5][a]..................................12

Harry D. Miller & Marvin B. Starr, Miller & Starr Cal.
   Real Estate 3d § 10:53 (3d ed. 2009).........................11

**REED SMITH LLP**
A limited liability partnership formed in the State of Delaware

## I.   INTRODUCTION

This lawsuit arises out of termination of a billboard-related property lease between Plaintiff Mozafar Hendessi ("Hendessi"), as landlord, and Defendant Clear Channel Outdoor, Inc. ("Clear Channel"), as tenant and sign owner.  On January 18, 2017, Clear Channel, facing continued unfavorable economic conditions, exercised its contractual right to terminate by properly giving Hendessi 60 days' notice and removed its sign from Hendessi's property at 5500 Auburn Boulevard.  Clear Channel terminated the lease effective March 31, 2017, paying Hendessi rent for the months of February and March 2017.

Clear Channel's sign ownership and its right to remove its own sign structure are clear and unambiguous in the original lease agreement between Hendessi's and Clear Channel's respective predecessors-in-interest.  The original lease agreement states that Clear Channel "shall remain the owner" of the sign and "shall have the right to remove" it at any time.  Clear Channel's right to terminate the lease on 60 days' notice is likewise express in the lease: Clear Channel "shall have the right to terminate the agreement at the end of any sixty day period upon written notice to [Hendessi], served not less than sixty days before the end of such sixty day period."  Clear Channel thus properly exercised its rights under the lease agreement in giving Hendessi the January 18, 2017 notice and removing its sign structure from the property.

Since Clear Channel did exactly as it was entitled to do under the parties' lease agreement, Hendessi cannot state any claim against Clear Channel.  But Hendessi's Complaint ignores the dispositive provisions of the lease and instead alleges that he has

Case No. 17-cv-02175-JAM-DB        - 1 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

suffered $2.8 million in damages resulting from local sign restrictions, adopted in 2007, which limit his ability to erect a new sign structure.  Clear Channel, of course, is not responsible for the City's local land use restrictions – Clear Channel's contract rights were enforceable before the City adopted its ordinance, and they are enforceable now.  Any change in Hendessi's ability to reconstruct an offsite sign structure on the property after Clear Channel removes its sign structure is attributable to the will of the Sacramento City Council, not Clear Channel's bargained-for conduct.  The Court should therefore grant Clear Channel judgment on the pleadings and dismiss this case.

## II.   ALLEGATIONS IN HENDESSI'S COMPLAINT[1]

The allegations in Hendessi's Complaint are straightforward. Hendessi is the owner of the real property at 5500 Auburn Boulevard in Sacramento, California (the "Property").  DN 1 (Complaint) ¶ 1.[2] Clear Channel is the owner of an outdoor advertising sign that, until January 2017, was located on Hendessi's Property.  *Id.* Ex. B. When Hendessi bought the Property in 2003, he became Clear Channel's landlord and collected rents from Clear Channel under the terms of a lease agreement effective April 1, 1985.  *Id.*  The 1985 lease agreement was for an initial term of seven years and provided, among other things, that "[Clear Channel] shall have the right to terminate the agreement at the end of any sixty day period upon written notice to [Hendessi], served not less than sixty days

---

[1] This account of the facts is taken from Hendessi's Complaint (DN 1), the factual allegations of which the Court should accept as true solely for the purpose of Clear Channel's motion for judgment on the pleadings.

[2] "DN" refers to Docket Number.

MPA IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

before the end of each sixty day period." *Id.* The lease also provided that: "[Clear Channel] shall remain the owner of all signs and improvements placed by [Clear Channel] on the property, and notwithstanding the fact that such signs and improvements constitute real estate fixtures, [Clear Channel] shall have the right to remove them at any time." *Id.*

Approximately two years after Hendessi purchased the Property, he and Clear Channel entered into a December 9, 2005 letter agreement which modified the 1985 lease agreement, including as to the rent and lease term. DN 1 Ex. C. Under the letter agreement, (1) Clear Channel's rent increased to $18,000 per year, payable in twelve equal monthly installments; (2) the term of the lease changed from seven years to ten years; (3) the rent due was subject to an annual three percent increase beginning November 1, 2006; (4) Hendessi agreed not to implement development of the Property that would require removal of the billboard "during the term of the lease, or subsequent successive terms;" and (5) "[a]ll other terms and conditions of the existing Lease Agreement dated April 1, 1985" remained the same. *Id.*

Hendessi and Clear Channel operated under the letter agreement for the entire ten year term, from 2005-2015. Beginning in November 2015, Clear Channel stopped paying the three percent cost-of-living increase, on the grounds that the term of the letter agreement had expired and the parties were operating under a month-to-month arrangement. Hendessi wrote Clear Channel a November 5, 2015 letter, claiming instead that the lease had been automatically renewed for an additional ten year term and that Clear Channel owed him a three percent annual rent increase. DN 1 Ex. D. But

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Hendessi continued to cash Clear Channel's timely monthly rent checks in each of the fifteen months between November 2015 and March 2017, without the three percent annual rent increase. *Id.* ¶ 23.[3]

In or about July 2016, Clear Channel met with Hendessi to discuss a reduction of the monthly rent, given poor economic conditions for Clear Channel's efforts to sell advertising on the sign. DN 1 ¶ 22. No agreement was reached. *Id.* ¶¶ 22-24. On January 18, 2017 Clear Channel sent a letter to Hendessi to terminate the parties' lease effective March 31, 2017. *Id.* ¶ 23. Shortly after Clear Channel terminated the lease, Clear Channel removed its sign from Hendessi's Property. *Id.* ¶ 24. Clear Channel continued to timely make monthly rent payments to Hendessi for the next 72 days, up to and including the rent for March 2017. Clear Channel stopped paying Hendessi rent after March 2017. *Id.* ¶¶ 26, 28.

**III. THE CITY OF SACRAMENTO'S OFFSITE SIGN REGULATIONS**

On October 16, 2007, the Sacramento City Council unanimously adopted an interim ordinance (since made permanent) establishing restrictions on new offsite signs within the City of Sacramento. RJN Exs. A, B.[4] According to the background of the ordinance,

---

[3] Clear Channel contends that the parties entered a month-to-month lease in November 2015. But, for purpose of this motion only, Clear Channel accepts as true that the lease automatically renewed, as alleged in Hendessi's Complaint. It makes no difference to the outcome of this motion, because Clear Channel retained the express right to terminate on 60 days' notice, regardless of term, and Hendessi concedes that Clear Channel "timely paid monthly rent to Hendessi up and including March, 2017," when Clear Channel properly terminated the lease. DN 1 ¶ 26.

[4] "RJN" refers to the accompanying Request for Judicial Notice.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"[o]ffsite signs, including billboards, by their very nature can cause long-lasting aesthetic harm, and produce visual clutter which distracts from the attractiveness of the city." *Id.* Ex. A  For that and other reasons, the City Council declared "from and after November 15, 2007, the construction, erection, installation, and use of new billboards are prohibited" within city limits, subject to certain enumerated exceptions. *Id.* Ex. B.

The City's ordinance has not prevented Hendessi from commercially exploiting his Property. During the term of the lease with Clear Channel, the lease expressly provided that he was free to develop his Property any way he chose, provided it would not require removal of Clear Channel's billboard structure. DN 1 Ex. C.  In fact, Hendessi currently maintains a commercial building on the Property, occupied by the Honey Vape & Smoke Shop. RJN Ex. C.

But in Hendessi's Complaint, he nevertheless alleges that the City's ordinance prohibits him from erecting a new billboard to replace Clear Channel's sign structure, and that he is likewise unable to enter into a new contract for offsite outdoor advertising with another company. DN 1 ¶¶ 29-30. As a consequence of the City's ordinance, Hendessi claims that Clear Channel owes him in excess of $2.8 million. *Id.* p. 9. And despite the Sacramento City Council's views on the "aesthetic harm" of billboards, Hendessi further alleges that Clear Channel's removal of its sign from his Property somehow harms the general public, too. *Id.* ¶ 22. Accordingly, he claims entitlement to the recovery of his attorney's fees for Clear Channel's alleged unfair competition under California Code of Civil Procedure §1021.5. *Id.*

**IV.  LEGAL STANDARD**

Case No. 17-cv-02175-JAM-DB      - 5 -
MPA IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Judgment on the pleadings is appropriate after the pleadings have closed when, on the face of those pleadings, accepting the allegations of the non-moving party as true, no material issue of fact remains to be resolved. *See* Fed.R.Civ.P. 12(c); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Under those circumstances, the moving party can obtain judgment as a matter of law. *Hal Roach Studios*, 896 F.2d at 1550. Alternatively, a district court may "dispos[e] of the motion by dismissal rather than judgment." *2 Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F.Supp.2d 898, 902-03 (S.D. Cal. 2004). "[D]ismissal can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.*, 311 F.Supp.2d at 902-03; *see also Balistreri v. Pacifica Police Dep' t*, 901 F.2d 696, 699 (9th Cir. 1988).

An action for breach of contract is ripe for resolution at the pleading stage when the meaning of the contract is clear. "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." *HSBC Bank USA, Nat. Ass'n v. Dara Petroleum, Inc*., 2010 WL 2197525, at *2-3 (E.D. Cal. May 28, 2010) (citing *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1040 (C.D. Cal. 2008)).

**V.    ARGUMENT AND AUTHORITIES**

The Court should grant judgment on the pleading here because the parties' lease agreement is unambiguous and extinguishes each of Hendessi's claims as a matter of law. Hendessi attempts to state four claims against Clear Channel in support of his $2.8 million prayer: (1) breach of contract; (2) breach of the implied

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

covenant of good faith and fair dealing; (3) waste and (4) unfair competition.  Each of those causes of action depends upon Hendessi proving that Clear Channel improperly terminated the lease and/or that Clear Channel wrongly removed its sign from Hendessi's Property – something he cannot do.

The parties' lease clearly establishes that: (1) Clear Channel had the right to terminate the lease on 60 days' advance notice to Hendessi; (2) Clear Channel is the owner of the sign it removed and had the right to remove it, at Clear Channel's sole election; and (3) once the lease was terminated, Hendessi could develop his Property however he sees fit, so long as he complies with applicable federal, state, and local law.  There is no theory under which Hendessi can maintain his claims against Clear Channel.

**A.    Hendessi's first claim for breach of contract fails because Clear Channel properly exercised its right to terminate the lease.**

Under California law, parties to a contract may agree on terms authorizing one party to terminate the agreement before expiration of a term by giving the other party prescribed notice. For example, in *Kurihara v. City Market of Los Angeles*, 90 Cal.App. 374, 381 (1928), the court upheld a landlord's right to terminate a lease for open market space. There, the lease gave the lessor the right to cancel the lease on 60 days' written notice to the lessees. In upholding the lease termination, the court noted that the lease's language gives "the lessor a greater right and power in the premises," thus allowing the landlord discretion to terminate the lease to make improvements to the property. *Id.* at pp. 380-381; *see also Maas v. Standard Oil Co. of California* 220 Cal.App.2d 913, 916 (1963) (upholding a lessee's contractual right to terminate lease

agreement early, after lessee had agreed to a five-year lease extension).

The law also mandates that courts follow the explicit language of a contract.  *See* Civ. Code, § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not *10 involve an absurdity").  In *Carma Developers v. Marathon Development California,* 2 Cal.4th 342, 376 (1992), the California Supreme Court recognized this mandate in upholding a lessor's right to terminate a lease in order to reap profits of a property's appreciated rental value by reletting the property. *Id.* at p. 376.  There, the lease at issue provided the lessor with a unilateral right of termination if the lessee attempted to sublet to a third party. In its decision, the Supreme Court stated that a party to a contract cannot be held liable for breach if that party complies with the express terms of the lease:

> As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct. And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.
> *Id.* at p. 374 (citations omitted).

In this case, the termination right in the 1985 lease agreement is clear and unambiguous.  It provides that:  "[Clear Channel] shall have the right to terminate the agreement at the end of any sixty day period upon written notice to [Hendessi], served not less sixty days before the end of such sixty day period."  DN 1 Ex. B.  When the parties signed the 2005 letter agreement, they affirmed that, except as stated therein, "[a]ll other terms and conditions of the existing Lease Agreement dated April 4, 1985 shall remain the same" – including Clear Channel's termination

MPA IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

right. *Id.* Ex. C.  And Hendessi admits in his Complaint that Clear Channel, as required by the terms of the lease agreement, gave Hendessi 72 days' notice of the lease termination, and continued to pay Hendessi monthly rent during the notice period.  DN 1 ¶¶ 26, 28.  That is all that Clear Channel was required to do, and it eliminates Hendessi's claim for breach of contract as a matter of law.

To be sure, the lease also contains another termination provision, which gives either party the right to terminate within 60 days of the end of a lease term. DN 1 Ex. B.  But that provision does not eliminate, abridge, or otherwise negate Clear Channel's right, stated earlier in the lease, to lawfully terminate the lease at the end of any 60-day notice period. Parties to a commercial lease may provide in the lease the kind and period of notice to terminate a tenancy in any manner they choose.  *See Folberg v. Clara G. R. Kinney Co.*, 104 Cal. App. 3d 136, 140 (1980); *see also Brawley v. Crosby Research Found.*, 73 Cal. App. 2d 103, 118 (1946) ("is not necessary that the provision giving to one party an option to terminate on substantial notice shall be supported by a consideration different from considerations supporting the entire agreement").  Clear Channel cannot be in breach for exercising a contract right.

**B.   Hendessi's second claim for breach of an implied covenant fails because Clear Channel properly terminated the lease.**

The covenant of good faith and fair dealing exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made.  *Guz* v. *Bechtel National, Inc.*, 24 Cal. 4th 317, 349–350

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(2000).  No obligation can be implied "which would result in the obliteration of a right expressly given under a written contract." *Gerdlund*, 190 Cal. App. 3d 263 at 277.  "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results."  *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App.3d 467, 482 (1984).

Hendessi cannot state any claim for breach of the implied covenant of good faith and fair dealing here.  He alleges in his Complaint that Clear Channel breached its implied covenant by (1) terminating the lease contrary to its terms, (2)"purporting" to terminate the Contract before the end of the stated term, and (3) "failing and refusing to pay" pursuant to the terms of the lease.  But, as set forth above, the parties' lease expressly authorizes Clear Channel to terminate the lease in the manner it did, and Hendessi concedes that "[Clear Channel] timely paid monthly rent to Hendessi up and including March, 2017."  DN 1 ¶ 26.  The lease itself gives Clear Channel discretion to terminate the lease, upon appropriate notice, for any reason.  Any interpretation that restricts Clear Channel's right to terminate would limit the discretion granted to Clear Channel and bargained-for by the parties, and in so doing violate the freedom of contract established in California case law.  *See Carma Developers,* 2 Cal.4th at 374.  Since Hendessi's claim would obliterate Clear Channel's express contract right, it fails as a matter of law.

**C.   Clear Channel had the express right to remove its sign and improvements, which eliminates Hendessi's third claim of waste.**

Waste is "an unlawful act or omission of duty on the part of a tenant, resulting in permanent injury to the [property]." *Old*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Republic Ins. Co. v. Super. Ct.*, 66 Cal.App. 4th 128, 149 (1998) (disapproved on other grounds by *Vandenberg v. Super. Ct.*, 21 Cal. 4th 815 (1999). "[T]o constitute waste, there must be some wrongful or tortious action or inaction by the person in possession..." Harry D. Miller & Marvin B. Starr, Miller & Starr Cal. Real Estate 3d § 10:53 (3d ed. 2009). If there is no wrongful or tortious action or inaction, there is no waste. *See id.*

For example, conduct consented to or required by the plaintiff does not constitute "waste". *Bomberger v. McKelvey*, 35 Cal. 2d 607, 620 (1950) ("[P]laintiffs had an irrevocable license to enter and a right to tear down the building, enforceable by specific performance, and it cannot be said that the Hills are guilty of waste because of plaintiffs' rightful actions in demolishing the building...") (emphasis added); *Hill v. Pinque*, 56 Cal. App. 245, 246 (1922) ("[D]efendants, in making certain permissible changes in said building, had committed no substantial waste...) (emphasis added); *cf. Graybiel v. Burke*, 124 Cal. App. 2d 255, 258, 265 (1954) (cutting of all merchantable timber when the authorizing cotenant owned at most a one-third interest in the land constituted waste).

Here, Hendessi's claim for waste fails because he cannot prove any wrongful or tortious action or inaction by Clear Channel. In his Complaint, Hendessi alleges that "[c]ommencing on or about January 2017, and since that time, [Clear Channel] has caused injury to the premises by committing waste thereon by removing said billboard advertising…and relocating said billboard advertising…" DN 1 ¶ 26. As a matter of law, however, the act of removing Clear Channel's sign cannot be waste because the lease expressly provides

that Clear Channel "remain[s] the owner" of the sign with "the right to remove" it at any time. *Id.* Ex. B.  Hendessi's consent to the removal of Clear Channel's sign is in the lease agreement and scotches his claim for waste in the Complaint.

**D.    Hendessi's fourth claim for violation of Business & Professions Code § 17200 fails because Clear Channel's alleged acts are not unlawful, unfair or fraudulent.**

As relevant here, Business and Professions Code sections 17200 *et seq.* (the "UCL") prohibits any business act or practice that is "unlawful," "unfair," or "fraudulent."  The "unlawful" business acts or practices prohibited by the UCL are those acts or practices expressly forbidden by law (e.g., any statutory, regulatory, or court-made law).  A business practice or act is "unfair" if "it threatens an incipient violation of an antitrust law, or violates the policy or spirit of such a law because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  49 Cal, Forms of Pleading & Prac. (2013) Unfair Competition, § 565.31[5][a], citing *Cel-Tech Comm. Inc. v. Los Angeles Cellular Tel. Co.*, 20 Ca1.4th 163, 187 (1999).  A business practice is "fraudulent" within the meaning of the UCL if "members of the public are likely to be deceived." *Committee on Children's Television v. General Foods Corp.*, 35 Cal.3d 197, 211 (1983).  Clear Channel's alleged conduct here is neither "unlawful," "unfair," nor "fraudulent."

First, Hendessi fails to identify any basis upon which Clear Channel's removal of its own sign can be considered "unlawful."  In order to establish liability under this prong of the UCL, Hendessi must show that Clear Channel's removal of its sign violated some statute or other law.  As explained above, the parties' lease

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

expressly states that Clear Channel has the right to terminate the lease, remains the owner of the sign, and has the right to remove the sign at any time.  Nothing in Hendessi's Complaint changes that.  Hendessi has thus failed to state a claim for relief under the "unlawful" prong of the UCL.

Second, and as a matter of law, Clear Channel's actions to remove its own sign from Hendessi's Property are not "unfair." Clear Channel's action to remove its sign, as permitted under the lease, do not threaten any incipient violation of any anti-trust laws or harm competition.

Hendessi vaguely alleges that the act of removal and operation of the City's ordinance "constitute ongoing and continuous unfair business practices." DN 1 ¶ 61.  But Hendessi's conclusory allegation is entirely undercut by the language of the lease, which controls the parties' respective rights and obligations vis-a-vis Clear Channel's sign structure. And the City's ordinance is irrelevant to this proceeding.  Laws enacted subsequent to the execution of an agreement are not deemed part of the agreement unless the language of the agreement clearly indicates the intent to be bound by future changes in law. *See, e.g., Swenson v. File*, 3 Cal.3d 389, 393 (1970). Here, the City's ordinance was adopted after the 1985 lease was executed (and after the 2005 letter agreement). There is nothing in the lease that expresses any intent to modify its terms based on future changes in law.  The City's ordinance has no impact Clear Channel's right to remove its sign structure.

Third, Hendessi fails to identify any basis upon which Clear Channel's actions can be considered "fraudulent."  Hendessi's

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case No. 17-cv-02175-JAM-DB     - 13 -

complaint is devoid of allegations as to how Clear Channel purportedly deceived or defrauded Hendessi or that he allegedly relied on any misrepresentation or omission of Clear Channel. *See In re Tobacco Cases*, 46 Ca1.4th 298, 326 (2009)(reliance required). Thus, Hendessi has failed to state a claim for relief under the "fraudulent" prong of the UCL.

Finally, Hendessi fails to allege any recoverable damages under the UCL.  A private plaintiff cannot recover damages under the UCL, but can recover restitution and disgorgement of profits. Bus. & Prof. Code § 17203.  In Hendessi's Complaint, he seeks "payment of all monies rightfully due him pursuant to the terms of the [lease] or otherwise retained by Clear Channel."  DN 1 ¶ 63. Such recovery does not constitute restitution or disgorgement, but recovery of compensatory damages that are not allowed by the UCL. Since Hendessi seeks a remedy that is not permitted under the UCL, his UCL claim fails for this reason, too.

**VI.  CONCLUSION**

Because Clear Channel's rights in the lease are clear, there is no legal basis for any of Hendessi's claims. The Court should grant judgment on the pleadings in favor of Clear Channel. Respectfully submitted,

Dated:  December 4, 2017.

> REED SMITH LLP
>
> By:*/s/ James A. Daire*     
> James A. Daire
> Attorneys for Defendant
> Clear Channel Outdoor, Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware